UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re PAWN AMERICA CONSUMER DATA BREACH LITIGATION | Case No. 21-CV-2554 (PJS/JFD) |
| MELISSA THOMAS; RANDELL HUFF; MEGAN MURILLO; MONIQUE DERR; and PAOLA MANZO, on behalf of themselves and all others similarly situated, | ORDER |
| Plaintiffs, | |
| v. | |
| PAWN AMERICA MINNESOTA, LLC; PAYDAY AMERICA, INC.; and PAL CARD MINNESOTA, LLC, | |
| Defendants. | |

Anne T. Regan, Nathan D. Prosser, and Lindsey L. Larson, HELLMUTH & JOHNSON, PLLC; Christopher P. Renz, Bryan L. Bleichner, and Jeffrey D. Bores, CHESTNUT CAMBRONNE P.A.; Terence R. Coates and Justin C. Walker, MARKOVITS, STOCK & DEMARCO, LLC; Joseph Lyon, THE LION LAW FIRM LLC; David K. Lietz and Gary M. Klinger, MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC, for plaintiffs.

Thomas W. Hayde and Shawn Tuma, SPENCER FANE LLP; Doug Boettge, STINSON LLP, for defendants.

Defendants Pawn America Minnesota, LLC, Payday America, Inc., and PAL Card Minnesota, LLC (collectively, "Pawn America") are Minnesota-based businesses

that offer pawnbroking and other services.  Plaintiffs are customers of Pawn America who filed this putative class action against Pawn America after their sensitive personal information was stolen from Pawn America's computer network.

This matter is before the Court on Pawn America's motion to compel arbitration. ECF No. 89.  For the reasons that follow, the Court finds that Pawn America has waived its right to compel plaintiffs to arbitrate their claims.

## I.  BACKGROUND

Plaintiffs filed this lawsuit on November 23, 2021, and Pawn America executed a waiver of service on December 2, 2021.  ECF Nos. 1, 7, 8, 9.  On December 3, counsel for the parties met and conferred about a potential motion to consolidate several related actions.  ECF No. 14.  Pawn America agreed to consolidation, but, in doing so, explicitly preserved "any defenses or rights available to [it]" and "reserved its right to move to dismiss the Pawn America Data Breach Actions under Federal Rule of Civil Procedure 12 and oppose any potential motion under Federal Rule of Civil Procedure 23."  *Id.*  The right to compel arbitration was not explicitly mentioned.

On January 7, 2022, after the Court entered orders consolidating the related actions, plaintiffs filed a Consolidated Class Action Complaint.  ECF No. 30.  Counsel for the parties met and conferred again that day to agree on a deadline for defendants to answer or otherwise respond to the consolidated complaint.  ECF No. 31.

On February 9, Pawn America filed a motion to dismiss the consolidated complaint.  Pawn America argued that plaintiffs lacked standing and, alternatively, that all of plaintiffs' claims should be dismissed on the merits.  ECF No. 40.  Pawn America did not say a word about arbitration in its motion or briefs.  *See id.*; ECF Nos. 41, 50.

On March 24, shortly after the last of the briefs regarding Pawn America's pending motion had been filed, the parties submitted a joint Rule 26(f) report.  ECF No. 51.  In describing its defenses, Pawn America noted that it "intend[ed] to raise all defenses available to [it] at law or equity" if its pending motion to dismiss was denied, but Pawn America did not specifically identify arbitration as a potential "defense[] available to [it]."  *Id.* at 3.  Pawn America also described a proposed discovery plan, under which discovery would proceed in two phases:  one phase regarding class certification and the other regarding the merits.  Pawn America also proposed a deadline for plaintiffs to bring a class-certification motion.  *Id.* at 7, 14–15.  Pawn America did not say a word about arbitration nor give any indication that it intended to move to compel arbitration (even though such a motion, if granted, would obviate the need for any discovery or class-certification proceedings).

On April 7, the parties appeared before Magistrate Judge Hildy Bowbeer for a Rule 16 conference.  ECF No. 52.  According to Pawn America, during the April 7 conference, it informed Judge Bowbeer and plaintiffs that it had "recently . . .

determined that all of the contracts . . . at issue contained binding arbitration clauses"

and that a motion to compel arbitration "would be forthcoming."  Hayde Decl. ¶ 4 [ECF

No. 87-1].  Pawn America also alleges that its counsel "orally moved the Court to stay

all discovery on the basis of . . . Defendants' forthcoming Motion to Compel

Arbitration."  *Id.* ¶ 5.  Plaintiffs have a much different recollection of the conference.

They contend that "Defendants' counsel never stated that Defendants intended to move

to compel arbitration . . . or to stay litigation."  Renz Decl. ¶ 3 [ECF No. 101].

On April 15, Judge Bowbeer entered an Initial Scheduling Order and Order for

Partial Stay Pending Ruling on Motion to Dismiss.  ECF No. 53.  In her orders, Judge

Bowbeer said nothing about any plan by Pawn America to move to compel arbitration

nor about an oral motion by Pawn America to stay the litigation.  Instead, in granting a

partial stay, Judge Bowbeer mentioned only the pending motion to dismiss:  "[I]n view

of the significant issues raised as to Plaintiffs' standing (and therefore to this Court's

subject matter jurisdiction), it is appropriate in this case to stay most discovery activity

until after the District Judge rules on the pending motion."  *Id.* at 1.  The order also

directed the parties to make initial disclosures, file a stipulated protective order, file a

stipulated protocol, and meet and confer regarding electronic discovery, because "it is

important that the parties be poised to commence discovery quickly if the motion to

dismiss is denied in whole or in part." *Id.* at 1–2.  Pawn America did not object to Judge Bowbeer's order.

On May 3, the Court held a hearing on Pawn America's motion to dismiss.  ECF No. 59.  Pawn America said nothing about a possible motion to compel arbitration at the hearing.

On May 16, the parties filed a stipulated protective order and a stipulated ESI (electronically stored information) protocol.  ECF Nos. 60, 62.  Two weeks later, the parties notified Judge Bowbeer that they had "agreed to exchange informal document requests and proposed search terms" and "further agreed to discuss informal information and document exchanges to facilitate an early mediation, which the parties have agreed to undertake and have tentatively scheduled for July 19, 2022."  ECF No. 66.  Once again, arbitration was not mentioned in any of these communications.

Finally, on July 11—more than seven months after this litigation was commenced—Pawn America formally notified plaintiffs that it had elected to arbitrate plaintiffs' claims.  *See* Renz Decl. Ex. 1 [ECF No. 101-1].  The following day, Pawn America served a motion to compel arbitration on plaintiffs' lead counsel.  *See* ECF No. 71.  On July 14, Pawn America contacted the Court to obtain a hearing date for its arbitration motion, and the Court scheduled a hearing for October 24, 2022.  *Id.*  About a week later, Pawn America wrote to the Court and asked for permission to file its papers

earlier than contemplated by the briefing schedule because "timeliness [of the motion to compel arbitration] may be an issue." *Id.* The Court denied Pawn America's request. ECF No. 72.

On August 8, the Court granted Pawn America's motion to dismiss in part. ECF No. 75. The Court found that plaintiffs had standing to seek monetary relief, but not to seek injunctive or declaratory relief. *Id.* The Court declined to address Pawn America's motion to dismiss the claims for monetary relief on the merits in light of Pawn America's anticipated motion to compel arbitration. *Id.* at 13 ("[T]he Court is not going to rule on the merits of claims that may have to be arbitrated.").

On August 22, Pawn America moved for a protective order and to stay litigation pending the Court's ruling on its motion to compel arbitration. ECF No. 77. Magistrate Judge John F. Docherty held a hearing on September 8 and granted the motion from the bench. ECF No. 88.

The Court now turns to Pawn America's motion to compel arbitration.

## II.  ANALYSIS

### *A.  Legal Standard*

As a general matter, arbitration is favored under federal law "as a form of dispute resolution, as reflected in the Federal Arbitration Act." *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1117 (8th Cir. 2011). Nevertheless, like other

contractual rights, the right to arbitrate may be waived.  *Lewallen v. Green Tree Serv'g,*

*L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007).

Prior to being reversed by the Supreme Court in *Morgan v. Sundance, Inc.*, 142

S. Ct. 1708 (2022), the Eighth Circuit considered three factors to determine if a party had

waived its right to arbitrate.  Under that test, waiver occurred if the party seeking to

compel arbitration (1) knew of its right to arbitrate, (2) "acted inconsistently with that

right," and (3) caused prejudice to its opponent.  *Lewallen*, 487 F.3d at 1090 (quoting

*Ritzel Commc'ns v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)).

In *Morgan*, however, the Supreme Court held that the Eighth Circuit was

incorrect to consider the last factor—prejudice to the opposing party—in its waiver

analysis.  142 S. Ct. at 1714.  And thus, in light of *Morgan*, the only questions for this

Court are whether Pawn America knew of its right to arbitrate and, if so, whether Pawn

America acted inconsistently with that right.  *Id.*

### B.  *Pawn America Knew of Its Right to Arbitrate*

According to Pawn America, it first determined that it "should have an

arbitration defense" in early April 2022.  Arb. Hr'g Tr. 3:20-24.  Therefore, Pawn

America argues, when the Court determines whether Pawn America acted

inconsistently with its right to arbitrate, the Court should consider only actions that

occurred after April 2022 (when it allegedly first learned about its right to arbitrate) and

before July 2022 (when it informed plaintiffs that it had elected to arbitrate their claims).

The Court disagrees.

When a contract contains an arbitration clause, the parties to that contract are

presumed to know of their right to arbitrate at the time the contract is signed. *See Parler*

*v. KFC Corp.*, 529 F. Supp. 2d 1009, 1014 (D. Minn. 2008) ("The assertion 'I didn't know

what was in the contract that I signed' is made by litigants frequently but almost never

successfully.  Absent fraud, a person is deemed to know the contents of a contract that

he or she signs.").  This is especially true of the party that drafted the contract

containing the arbitration clause.  *See Erdman*, 650 F.3d at 1118 ("The first factor,

whether Erdman and EAEC knew of the right to arbitrate, is obvious from the fact that

Erdman, a sophisticated party . . . drafted the Contract containing detailed mediation

and arbitration provisions, and is presumed to know its contents."); *see also Ritzel*, 989

F.2d at 969 ("The Goodwin group drafted the Stock Purchase agreement that contains

the arbitration provisions, and thus knew of the existing right of arbitration.").

Pawn America drafted each of the contracts at issue here.  Consequently, Pawn

America is presumed to have known of its right to arbitrate at the time the contracts

were signed, which was well before this lawsuit was filed.

Pawn America argues, however, that only *actual* knowledge, not *presumed*

knowledge, can give rise to a waiver of the right to arbitrate.  Pawn America argues that

it did not have actual knowledge of the contracts that it drafted and signed until months after it was sued, when one or more of its lawyers got around to reading and analyzing those contracts.

The Court declines to adopt Pawn America's proposed actual-knowledge rule. For one thing, the Court is unaware of any judicial decision—in the Eighth Circuit or elsewhere—that embraces such a rule. For another, adopting the rule suggested by Pawn America would raise a host of subsidiary questions. In deciding when Pawn America had "actual knowledge" of the contents of its own contract, whose knowledge would matter? Would the knowledge of a current employee suffice? How about a former employee? Is it necessary that the employee be an officer? Or that reviewing contracts be within the scope of that employee's duties? Is it necessary that the agent be an attorney—or, as Pawn America seems to suggest, an attorney representing it in this very action?

And how much knowledge is sufficient? Is it enough for the relevant agent to know that, as a general matter, Pawn America's contracts with its customers contain arbitration clauses? Or does the agent have to know that the specific contract with the specific plaintiff contains an arbitration clause? Is it sufficient that the agent knows that the plaintiff's contract contains some type of arbitration clause? Or does the agent have to know the precise terms of that clause? Or, as Pawn America seems to imply, must

the agent have reached the conclusion, after analyzing the clause, that Pawn America has the right to compel arbitration?

Depending on how these questions are answered, other difficult questions could arise. For example, if this Court were to adopt the rule that Pawn America seems to favor—that it did not become aware of its right to arbitrate until its attorney located the relevant contract, read the arbitration clause, analyzed it, and then concluded that Pawn America had the right to compel arbitration—would the rule include some kind of diligence requirement? Here, for example, even accepting Pawn America's version of the facts as true, it took Pawn America more than four months to realize that it had the right to compel arbitration, and then another three months to exercise that right. Should not the plaintiffs be able to take discovery into the reasons for the delays? And would not that discovery raise thorny issues related to the attorney-client privilege and work-product doctrine?

The Court declines to adopt such an unworkable rule. Instead, the Court holds that Pawn America had knowledge of the arbitration clauses because those arbitration clauses appeared in its own contracts. Plaintiffs do not need to prove that a particular agent of Pawn America attained a particular level of subjective knowledge or understanding of Pawn America's right to arbitrate.

C.  *Pawn America Acted Inconsistently with its Right to Arbitration*

"A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." *Lewallen*, 487 F.3d at 1090 (cleaned up).  "To safeguard its right to arbitration, a party must 'do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.'" *Messina v. N. Cent. Distrib'g, Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) (quoting *Lewallen*, 487 F.3d at 1091)).  Based on the procedural history of this matter, the Court concludes that Pawn America "substantially invoke[d] the litigation machinery" before it asserted its right to arbitrate.

1.  Motion to Dismiss

To begin with, Pawn America moved to dismiss each of plaintiffs' claims in February 2022, long before it ever raised the possibility of arbitration with plaintiffs or the Court (even accepting Pawn America's version of events).  Pawn America argues that its motion to dismiss is not evidence of waiver because "[s]eeking a decision on the merits does not necessarily denote waiver." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 863 (8th Cir. 2013).  But the cases on which Pawn America relies are distinguishable.  In *ABF Freight Systems*, for example, the court described the purpose of the defendants' prior motion to dismiss as "not an alternative to the grievance process; it was to determine whether [the parties] must use the process." *Id.*

at 865; *see also id.* at 864 ("The question of contract formation and standing required

judicial determination before ABF needed to bring its grievance through the grievance

process."). Similarly, the motion to dismiss in *Dumont* was based only on

"jurisdictional and quasi-jurisdictional grounds," the defendant had taken "no action

with respect to the merits of the case prior to the district court ordering arbitration," and

the defendant had "specifically warned at the time it filed its dismissal motion that it

would seek to compel arbitration." *Dumont v. Saskatchewan Gov't Ins. (SGI)*, 258 F.3d

880, 886–87 (8th Cir. 2001).

By contrast, Pawn America moved to dismiss all of plaintiffs' claims for lack of

standing *and on the merits*. *See* Def. Memo. Supp. Mot. Dismiss at 16–21 (arguing that

Court should dismiss each count of the consolidated complaint for failure to state a

claim). Pawn America urges the Court not to regard its merits arguments as evidence

of waiver because, it says, plaintiffs would have been able to amend their complaint if

the Court had dismissed plaintiffs' claims on the merits. But that was certainly not

guaranteed—and, as to at least some of the claims, not even likely. In fact, in another

case from this District on which Pawn America relies, the Court dismissed all of the

plaintiff's claims with prejudice and *denied* leave to amend. *See In re SuperValu, Inc.,*

*Customer Data Sec. Breach Litig.*, No. 14-MD-2586 (ADM/TNL), 2018 WL 1189327 (D.

Minn. Mar. 7, 2018) (dismissing complaint with prejudice), *aff'd sub nom. In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019).

Moreover, in support of its motion to dismiss, Pawn America argued that some of plaintiffs' claims failed as a matter of law—i.e., that there was nothing plaintiffs could do to save those claims.  *See* Def. Memo. Supp. Mot. Dismiss at 18; Def. Reply Supp. Mot. Dismiss at 13 (arguing that negligence per se and implied contract claims fail as a matter of law).  And thus, had the Court agreed with Pawn America, the Court would have dismissed those claims with prejudice and not given plaintiffs an opportunity to replead them.

The Court's conclusion that Pawn America's motion to dismiss is strong evidence of waiver is bolstered by the Eighth Circuit's decisions in *McCoy v. Walmart, Inc.*, 13 F.4th 702 (8th Cir. 2021), and *Hooper v. Advance Am., Cash Advance Centers of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009).  In *McCoy*, the court concluded that "[i]t makes no difference that the [motion to dismiss] focused on more than just the merits."  13 F.4th at 704.  Instead, because the motion "also 'focused on pleading deficiencies' and 'sought dismissal of frivolous claims,'" the defendant had "substantially invoked the litigation machinery."  *Id.* (quoting *Hooper*, 589 F.3d at 919, 922, and *Lewallen*, 487 F.3d at 1090).  And in *Hooper*, the "motion to dismiss was extensive and exhaustive" and "sought a decision on the merits on Counts II through VII, an immediate and total victory in the

parties' dispute."  589 F.3d at 921–22; *see also id.* at 922 (faulting the defendant for not

"fil[ing] a motion to dismiss Count I for lack of jurisdiction and simultaneously

mov[ing] to compel arbitration on Counts II through VII pending the district court's

ruling").

## 2.  Other Litigation Conduct

In addition to filing a motion to dismiss, Pawn America participated in

numerous conferences, communications, and other pretrial proceedings, all without

mentioning arbitration.  In *Messina*, the Eighth Circuit found waiver where a defendant

participated in pretrial proceedings for a similarly lengthy period without mentioning

arbitration.  *See* 821 F.3d at 1050 (finding defendant had "failed to 'do all it could

reasonably have been expected to do' to raise its [arbitration] right at the earliest

feasible time" because it "failed to mention the arbitration agreement in its answer

which listed twenty four other affirmative defenses, in the joint Rule 26(f) report, at the

pretrial scheduling conference, or in its motion to transfer venue" (quoting *Lewallen*, 487

F.3d at 1091)); *see also McCoy,* 13 F.4th at 704 ("participat[ing] in discovery, including

filing a joint scheduling order and serving . . . initial disclosures, . . . are 'hardly the

actions of a party trying to move promptly for arbitration'" (quoting *Sitzer v. Nat'l Ass'n*

*of Realtors,* 12 F.4th 853, 856–57 (8th Cir. 2021)).

Pawn America does not dispute that, for the most part, it was silent regarding its intent to arbitrate from the time this lawsuit was filed in November 2021 until it notified plaintiffs that it had elected to arbitrate plaintiffs' claims in July 2022.  Pawn America claims, however, that it informed Judge Bowbeer at the April 7, 2022, status conference that it intended to move to compel arbitration and orally moved to stay the litigation until its anticipated motion to compel arbitration was decided.  As noted above, plaintiffs vigorously dispute Pawn America's version of events, and, because the conference was not recorded or transcribed, this Court cannot know for certain who is correct.

That said, the Court regards plaintiffs' version of events as being more plausible than Pawn America's.  Again, Pawn America alleges that it informed Judge Bowbeer and plaintiffs at the conference that an "arbitration motion would be forthcoming" and that it "orally moved the Court to stay all discovery on the basis of both the pendency of Defendants' Motion to Dismiss, as well as Defendants' forthcoming Motion to Compel Arbitration."  Hayde Decl. ¶¶ 4–5.  Yet neither the minute entry for the April 7 conference nor Judge Bowbeer's order on Pawn America's motion to stay even hints at a forthcoming arbitration motion.  *See* ECF No. 52 ("The Court held an initial Rule 16 conference and discussed with the parties their respective [sic] regarding whether discovery should be stayed pending a ruling on Defendants' motion to dismiss."); ECF

No. 53 at 1 ("Defendants have proposed both that discovery be stayed altogether until a ruling has been issued on their motion to dismiss and, if that motion is denied in whole or in part, that fact discovery be bifurcated or phased.").

The undersigned worked with (now retired) Judge Bowbeer for many years. Typically, if a party notified Judge Bowbeer at a conference that it intended to move to compel arbitration, Judge Bowbeer would note that intention in the minute entry regarding that conference. Moreover, if the party went further and moved to stay the litigation on the basis of a forthcoming arbitration motion, Judge Bowbeer would typically *rule* on that motion to stay. And if the party had a motion to dismiss pending before the undersigned, Judge Bowbeer would usually call the undersigned to discuss the matter. The undersigned cannot know for certain what was said at the April 7 conference, but Judge Bowbeer's conduct after the conference is more consistent with plaintiffs' version than Pawn America's.

Even if the April 7 status conference transpired exactly as Pawn America describes, Pawn America has offered no explanation for why it did not appeal or object to Judge Bowbeer's order so as to preserve its right to arbitrate. Nor can Pawn America explain why it never informed this Court about its intent to arbitrate either before or during the hearing on its motion to dismiss. Pawn America does not dispute that it never raised arbitration with this Court until July, three months after it allegedly raised

the issue with Judge Bowbeer, and more than two months after the Court heard

argument on its motion to dismiss.  When Pawn America finally notified this Court

about its intent to pursue arbitration in July, it acted with a sense of urgency.  *See* ECF

No. 71 ("I write to request your permission to file the motion before the . . . filing

deadline.  It is important that Defendants file the Motion of record now . . . [because]

timeliness may be an issue.").  But Pawn America has no credible explanation for why,

if it had determined in April that it was going to compel arbitration, it sat on its hands

in April, May, and June, only to decide in July that it was urgent that it act to protect its

right to arbitrate.  That makes no sense.

   For these reasons, the Court concludes that Pawn America waived its right to

arbitrate plaintiffs' claims.

ORDER

   Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendants' motion to compel arbitration [ECF No. 89]

is DENIED.


 Dated:  May 11, 2023                    s/Patrick J. Schiltz
                                         Patrick J. Schiltz, Chief Judge
                                         United States District Court